1  Laurance Lee, State Bar No. 301482
   Sarah Ropelato, State Bar No. 254848
2  **LEGAL SERVICES OF NORTHERN CALIFORNIA**
   515 12th Street
3  Sacramento, CA 95814
   Telephone:   (916) 551-2150
4  Facsimile:    (916) 551-2196
   E-mail:        llee@lsnc.net
5                 sropelato@lsnc.net

6  Abre' Conner, State Bar No. 306024
   William S. Freeman, State Bar No. 82002
7  **AMERICAN CIVIL LIBERTIES UNION**
   **FOUNDATION OF NORTHERN CALIFORNIA, INC.**
8  39 Drumm Street
   San Francisco, CA 94111
9  Telephone:   (415) 621-2493
   Facsimile:    (415) 255-8437
10 E-mail:        aconner@aclunc.org,
                  wfreeman@aclunc.org

11 Attorneys for Plaintiffs

12                  UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14                       SACRAMENTO DIVISION

15

16

17 SACRAMENTO REGIONAL              Case No.: 2:18-CV-00878-MCE-AC
   COALITION TO END
18 HOMELESSNESS, JAMES LEE          **MEMORANDUM OF POINTS AND**
   CLARK, AND SACRAMENTO            **AUTHORITIES IN SUPPORT OF MOTION**
19 HOMELESS ORGANIZING              **FOR AWARD OF ATTORNEY'S FEES**
   COMMITTEE.,
20                                  Hearing Date:   March 5, 2020
                  Plaintiffs,       Courtroom:       7
21                                  Time:             2:00 p.m.
   vs.
22                                  Judge: Hon. Morrison C. England, Jr.
   CITY OF SACRAMENTO,
23                                  Action Filed: April 10, 2018

24                Defendant

25

26

27

28 _____
   **MEMO OF POINTS AND AUTHORITIES ISO MOTION FOR AWARD OF ATTORNEY'S FEES**
   Case No.: 2:18-CV-00878-MCE-AC

# Table of Contents

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 2

    I.    THE ORDINANCE ................................................................................. 2

        A.    Enacting the Ordinance ................................................................ 2

        B.    Plaintiffs Clark, SRCEH, and SHOC ....................................... 3

    II.    PLAINTIFFS SOUGHT TO RESOLVE THEIR CLAIMS WITHOUT LITIGATION PRIOR TO FILING SUIT. ........................................... 3

    III.    PLAINTIFFS CONTINUED TO SEEK RESOLUTION THROUGHOUT THE LITIGATION, EVEN AS THE CITY CONTINUED TO DEFEND THE ORDINANCE ........ 4

        A.    The Initial Complaint and Motion for Preliminary Injunction ........... 4

        B.    The Preliminary Injunction Decision ................................. 5

        C.    Discovery ................................................................. 5

        D.    Repeal of Ordinance and Consent Decree ........................ 6

    IV.    THE CITY CONCEDES PLAINTIFFS' ENTITLEMENT TO AN AWARD OF REASONABLE FEES ........................................................... 6

    V.    THE LITIGATION CONFERRED A SIGNIFICANT BENEFIT ON PLAINTIFFS AND THE BROADER COMMUNITY ........................................ 7

    VI.    THE REASONABLE FEES SOUGHT BY PLAINTIFF .......................... 7

ARGUMENT ..................................................................................................... 10

    I.    THE PLAINTIFFS PREVAILED AND ARE ENTITLED TO ATTORNEY'S FEES ........... 10

        A.    Federal Law – 42 U.S.C. § 1988 .................................... 11

            1.    Vindication of the right of Free Speech -- a "right secured by the Constitution" -- supports a Section 1988 fee award ........................................................ 11

            2.    Plaintiffs were the prevailing parties because they succeeded in a motion for preliminary injunction ........... 11

        B.    California Law – Code Civ. Proc. § 1021.5 ..................... 11

1.     Plaintiffs are prevailing parties by reason of the preliminary injunction............................................................ 12

        a)     This case conferred a significant benefit on the residents of Sacramento........................................... 12

        b)     Necessity and financial burden of private enforcement support the award of fees ................... 13

        c)     Plaintiffs reasonably attempted to settle before filing this lawsuit........................................................ 14

II.     THE FEES SOUGHT ARE REASONABLE AND FULLY COMPENSABLE .................... 14

    A.     The hours claimed are reasonable ................................................. 14

    B.     The hourly rates claimed are reasonable ....................................... 17

CONCLUSION ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Nevada v. City of Las Vegas*,
466 F.3d 784 (9th Cir. 2006) ....................................................................................... 12

*Adoption of Joshua S.*,
42 Cal.4th 945 (2008) ................................................................................................ 16

*Apple, Inc. v. Franchise Tax Board*,
199 Cal.App.4th 1 (2011) ........................................................................................... 15

*Barjon v. Dalton*,
132 F.3d 496 (9th Cir. 1997) ..................................................................................... 20

*Baxter v. Salutary Sportsclubs, Inc.*,
122 Cal.App.4th 941 (2004) ....................................................................................... 15

*Blessing v. Freestone*, et al.,
520 U.S. 329 (1997) .................................................................................................. 12

*Blum v. Stenson*,
465 U.S. 886, (1984) ................................................................................................. 20

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ................................................................................... 18

*City of Santa Monica v. Stewart*,
126 Cal.App.4th 43 (2005) ......................................................................................... 16

*Conservatorship of Whitley*,
50 Cal.4th 1206 (2010) .............................................................................................. 16

*County of Colusa v. California Wildlife Conservation Bd.*,
145 Cal.App.4th 637 (2006) ................................................................................. 14, 15

*Edna Valley Watch v. Cnty. of San Luis Obispo*,
197 Cal.App.4th 1312 (2011) ..................................................................................... 16

*Graham v. DaimlerChrysler Corp.*,
34 Cal.4th 553 (2005) ......................................................................................... 15, 17

*Hanrahan v. Hampton*,
446 U.S. 754 (1980) .................................................................................................. 13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................................... passim

*Jordan v. Multnomah County,*
  815 F.2d 1258 (9th Cir. 1987)...................................................................... 17

*Keith v. Volpe,*
  501 F. Supp. 403 (C.D. Cal. 1980) ............................................................. 18

*Kerr v. Screen Extras Guild, Inc.,*
  526 F.2d 67 (9th Cir. 1975).................................................................. 17, 18

*Mangold v. Cal. Pub. Utils. Comm'n,*
  67 F.3d 1470 (9th Cir. 1995)...................................................................... 14

*McGrath v. County of Nevada,*
  67 F.3d 248 (9th Cir. 1995)........................................................................ 18

*Missouri v. Jenkins,*
  491 U.S. 274 (1989) .................................................................................... 20

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008).................................................................... 18

*Nadeau v. Helgemoe,*
  581 F.2d 275 (1st Cir. 1978) ...................................................................... 13

*Norton v. City of Springfield,*
  806 F.3d 411 (7th Cir. 2015)...................................................................... 19

*Robinson v. City of Chowchilla,*
  202 Cal.App.4th ......................................................................................... 15

*Sorenson v. Mink,*
  239 F.3d 1140 (9th Cir. 2001).................................................................... 20

*Stanford Daily v. Zurcher,*
  64 F. R. D. 680 (N.D. Cal. 1974)............................................................... 18

*Texas State Teachers Ass'n v. Garland Independent School Dist.,*
  489 U.S. 782 (1989) .................................................................................... 13

*Thayer v City of Worcester,*
  Mass 144 F. Supp.3d 218 (D. Mass. 2015) ............................................... 19

*Van Gerwen v. Guarantee Mut. Life Co.,*
  214 F.3d 1041 (9th Cir. 2000).................................................................... 18

*Vasquez v. State,*
  45 Cal.4th 243 (2008) ............................................................................ 15, 17

*Woodland Hills Residents Assn., Inc. v. City Council*
  23 Cal.3d .............................................................................................. 15, 20

**Statutes**

42 U.S.C. § 1988...................................................................................... 1, 11, 12

Cal. Code Civ. Proc. § 1021.5 ................................................................passim

**INTRODUCTION**

Plaintiffs James Lee Clark, Sacramento Regional Coalition to End Homelessness ("SRCEH") and Sacramento Homeless Organizing Committee ("SHOC") (together, "Plaintiffs") hereby move for an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and Cal. Code Civ. Proc. § 1021.5.

Plaintiffs are two non-profit entities and a Sacramento resident who prevailed on a motion for preliminary injunction and stopped the City of Sacramento ("City") from enforcing a facially unconstitutional ordinance that criminalized solicitation for immediate donations. In its Memorandum and Order granting the injunction ("Order", ECF No. 29), the Court held that the Plaintiffs had established a likelihood of prevailing on the merits because, among other things, the ordinance violated Plaintiffs' First Amendment rights. Following the issuance of the Order, the City repealed the Ordinance and entered into a settlement with Plaintiffs in which it pledged not to attempt to re-enact the restrictions that the Court invalidated. The settlement resolved all outstanding issues except for the amount of attorney's fees to which Plaintiffs are entitled, which the parties agreed to submit to the Court through this motion.

Under settled law, Plaintiffs as prevailing parties are entitled to their reasonable attorney's fees and costs. Plaintiffs hereby request an award of $296,621.33 in attorney's fees related to the prosecution of this action, and $25,000 in fees for the preparation of this motion for a total of $321,621.33. The amounts sought are reasonable in light of the nature of the litigation, the work necessarily performed to achieve a successful result, and prevailing rates for similar services.

The hours expended by counsel were reasonable and necessary, due in large part to the City's intransigence even after the issuance of the Order. The recovery sought here incorporates significant discounts from both the hours expended and counsel's normal hourly rates. These rates, as discounted, are in line with the prevailing Sacramento market rates for similar complex federal litigation.

In support of this motion, Plaintiffs submit the declarations of each of the attorneys principally involved in this litigation concerning their work, and the declaration of distinguished local attorney Jay-Allen Eisen concerning the reasonableness of this request.

## FACTUAL BACKGROUND

### I.    The Ordinance

In its Order, the Court recited the facts supporting issuance of the preliminary injunction, together with record references. Order, ECF No. 29 at 2-3. These facts are summarized below for the Court's convenience.

### A.    Enacting the Ordinance

On November 14, 2017, Sacramento enacted Ordinance No. 2017-0054, which added Chapter 8.134 to the Sacramento City Code. Order, ECF No. 29 at 2. The Ordinance defined solicitation to include any type of request, including both panhandling and charitable solicitation, for "an immediate donation of money or other thing of value." *Id*. It established extensive no-solicitation "buffer zones" including public sidewalks, streets, and within 30 feet of banks and ATMs. *Id*. It prohibited solicitation from drivers within 30 feet of a driveway of a business establishment, or from persons in outdoor dining areas or at gasoline stations. *Id*. The Ordinance also prohibited "aggressive" or "intrusive" solicitations in any public place, defining "aggressive" and "intrusive" as including a broad range of conduct, from causing a "reasonable person to fear bodily harm" to "approaching a person, after the person has indicated they do not want to be solicited." A violation of the Ordinance was an infraction, punishable by a fine; three violations within a six-month period were punishable by up to six months in jail. *Id*.

Prior to enactment of the Ordinance, the Sacramento City Council was not presented with any statistics, testimony or other evidence that established a need for

the Ordinance or an explanation of how persons requesting immediate donations were

endangering public safety or creating traffic hazards. *Id.* at 3.

**B.     Plaintiffs Clark, SRCEH, and SHOC**

Plaintiff Clark established that he was directly impacted by the Ordinance as it

purported to criminalize activities which he relied on to be able to buy food and other life

necessities. Order, ECF No. 29 at 8. Plaintiffs SRCEH and SHOC established that they

suffered harm from the Ordinance in the form of diversion of organizational resources.

*Id.*

**II.     Plaintiffs Sought to Resolve Their Claims Without Litigation Prior to Filing
Suit.**

Plaintiffs made every effort to dissuade the City from enacting the Ordinance,

appearing at public hearings and submitting letters demonstrating why the proposed

Ordinance was both unnecessary and unconstitutional. Erlenbusch Decl. ECF No. 9-2,

¶¶ 8-17 and Exs. A-C. Plaintiff SRCEH's Executive Director, Bob Erlenbusch, testified

before the Sacramento City Council on July 25, 2017, September 19, 2017, and

November 14, 2017; sent letters to the Mayor and City Council dated August 7, 2017

and August 14, 2017; and provided a pamphlet to the City Council on November 14,

2017, all explaining the serious legal defects and dehumanizing effects of the proposed

Ordinance. *Id.* Plaintiff SHOC's Executive Director, Paula Lomazzi, also testified before

the City Council in opposition to the Ordinance on August 22, 2017 and September 19,

2017. Lomazzi Decl. ECF No. 9-4, ¶ 8. Plaintiff Clark testified before the City Council on

September 19, 2017 and November 14, 2017. Clark Decl. ECF No. 9-3, ¶ 12. On April

2, 2018, Legal Services of Northern California sent a letter on behalf of SRCEH and Mr.

Clark imploring the City to reconsider and repeal the Ordinance considering its

constitutional defects. Declaration of Laurance Lee, submitted herewith, "Lee Decl.") at

¶ 7. The City did not respond. *Id.* at ¶ 8.

Despite these repeated warnings that the Ordinance was unconstitutional, Defendant enacted the Ordinance. ECF No. 9 at 7 ¶¶ 2-9.

**III.    Plaintiffs Continued to Seek Resolution Throughout the Litigation, Even as the City Continued to Defend the Ordinance**

**A.    The Initial Complaint and Motion for Preliminary Injunction**

Plaintiffs' efforts to resolve their claims did not stop after they filed their complaint and motion for preliminary injunction in April 2018. Initially, Plaintiffs' efforts were met with adamant insistence by the City that it could somehow develop evidence to support the legality of the Ordinance–followed, eventually, by the admission that no such evidence ever existed. Order, ECF No. 29 at 4. Rather than promptly concede that the Ordinance was fatally flawed and could not be saved, the City continued for many months in a vain attempt to forestall the inevitable collapse of its defenses, which required considerable additional effort by Plaintiffs' counsel.

As the Court will recall, when Plaintiffs' motion for preliminary injunction was initially heard on June 28, 2018, the City for the first time represented to the Court that while it stood by the Ordinance's provisions prohibiting "aggressive" or "intrusive" solicitation, it intended to withdraw the Ordinance to the extent it purported to prohibit solicitation in particular locations. ECF No. 29 at 4. Accordingly, the Court issued a minute order continuing the hearing to July 5, 2018 and ordering the City to file and serve its proposal to amend the Ordinance by July 3, 2018. ECF No. 29 at 4; Minute Order, ECF No. 23. In response, the City withdrew its offer to withdraw the location-based prohibitions, and asked instead for an open-ended extension of time because it "would like the opportunity to … conduct further study and to gather empirical data and evidence to determine the appropriate scope of any necessary amendment." Defendant City of Sacramento's Proposal Regarding Sacramento City Ordinance No. 8.134.030, ECF No. 25, at 1-2. In other words, the City was conceding that it had not developed evidence to support those prohibitions prior to passage. The Court properly rejected the

City's request for an extension of time to develop an evidentiary record and granted the preliminary injunction, noting that the City could return to court if it could present the necessary evidence. Order, ECF No. 29 at 10.

## B.    The Preliminary Injunction Decision

The Court found that Plaintiffs had established a probability of success on the merits and irreparable harm, and that the balance of equities and the public interest favored a preliminary injunction. Order, ECF No. 29 at 8-9. The Court found that the City had not established that the Ordinance was "the least restrictive means for addressing a compelling governmental interest," but invited the City to submit any evidence it might develop later to support such a contention. *Id.* at 10. The City never did so.

Following issuance of the Order, the City continued to insist that it would defend the constitutionality of the Ordinance. Accordingly, Plaintiffs proceeded to prepare the case for trial. See Joint Report re Discovery Plan, ECF No. 30.

## C.    Discovery

In the Joint Report re Discovery Plan, filed August 9, 2018 (ECF No. 30), the City outlined its plans to take discovery from Plaintiffs; and Plaintiffs indicated that they intended to take testimony from percipient witnesses, as well as "discovery into the City of Sacramento's justifications for enacting the Ordinance, which includes data, reports, studies, and complaints related to the adoption of the Ordinance as well as any training, policies, protocols, and information systems regarding the implementation of the Ordinance, and citations regarding the Ordinance." *Id.* at 1-2. On October 22, 2018, Plaintiffs propounded interrogatories, requests for production of documents, and requests for admission to the City. Declaration of Abre' Conner, submitted herewith, ("Conner Decl.") at ¶¶ 9-10. Defendants responded with a mix of objections and, in some cases, production of documents that were not consistent with the parties' prior agreements or recognized protocols for the discovery of electronically stored

information, necessitating additional efforts by Plaintiffs' counsel. *Id.* ¶ 10. Counsel for the parties met and conferred in person on January 30, 2019 to discuss these issues, and to also to discuss the depositions of the City's percipient witnesses concerning the development of the Ordinance and any evidence supporting its restrictions. *Id.* ¶ 11; Lee Decl. ¶ 9. On February 1, 2019, Plaintiffs' counsel wrote to counsel for the City, confirming these discussions and requesting dates for depositions of City Council members and the individuals the City had identified as being involved in the development of the Ordinance. Lee Decl. ¶ 10.

**D.     Repeal of Ordinance and Consent Decree**

On February 15, 2019, counsel for the City called Plaintiffs' counsel, offering to settle the litigation by full repeal of the Ordinance. *Id.* ¶ 11. Counsel stated that he was prepared to recommend repeal at a City Council meeting on February 26, 2019, and invited Plaintiffs' counsel to submit a proposal for payment of attorney's fees. *Id.* On March 7, 2019, counsel for the City confirmed that City Council had agreed to repeal the Ordinance in its entirety. *Id.* ¶ 12. During the next several months, action by the City Council on the repeal was repeatedly delayed. Conner Decl. ¶ 12. The Ordinance was repealed on May 14, 2019. Consent Decree and Final Judgment, ECF No. 36 at 2. Counsel for the parties negotiated a settlement consisting of a Consent Decree and Final Judgment ("Consent Decree"), which was jointly submitted to the Court and entered and signed by the Court on January 14, 2020. ECF No. 36.

**IV.    The City Concedes Plaintiffs' Entitlement to an Award of Reasonable Fees**

In the Consent Decree, Defendants agreed that "Plaintiffs' commencement and prosecution of the Action was a material cause of the Court's issuance of the Order and Defendants' subsequent repeal of the Ordinance, and of the substantial change in the relationship between the Parties and the concrete relief resulting therefrom." Consent Decree, ECF No. 36 at 2. The Consent Decree also provides for "the payment by

Defendant to Plaintiffs of Plaintiffs' attorney's fees and costs in an amount to be

determined by the Court …." *Id.*[1]

## V.   The Litigation Conferred a Significant Benefit on Plaintiffs and the Broader Community

As a result of this litigation, the City of Sacramento has withdrawn the Ordinance

and promised not to seek to enact any similar restrictions on the right of persons to

solicit donations for immediate assistance. ECF No. 36 at 2-3. As a result, Plaintiff Clark

and others who are similarly situated will be able to exercise their First Amendment right

to pursue life-sustaining activities free from the threat of arrest, prosecution and

punishment. Organizations like Plaintiffs SRCEH and SHOC, freed from the diversion of

their resources caused by enactment of the Ordinance, will once again be able to

devote their full resources to supporting their organizational goals. The initiation and

prosecution of this case plainly achieved important individual and societal goals.

## VI.   The Reasonable Fees Sought by Plaintiff

From the inception of this case, Plaintiffs have been represented by highly-

qualified, experienced litigators from the ACLU Foundation of Northern California

("ACLU-NC") and Legal Services of Northern California. Plaintiffs seek compensation

for the time incurred by two attorneys from each organization even though additional

attorneys within each office had significant roles in developing and litigating this case,

and each office expended considerably more time than the time for which compensation

is sought.

The work of the ACLU Foundation of Northern California was principally

performed by Abre' L. Conner and William S. Freeman. Conner Decl. ¶¶ 15-17. Ms.

Conner's adjusted hourly rate of $337.50 reflects her eight years as a civil rights lawyer,

and particularly her expertise in free speech and economic justice cases. Conner Decl.

---

[1] Plaintiffs attempted to settle their attorney's fee claim without the necessity of Court involvement, but that was effort was unsuccessful. Conner Decl. ¶ 13.

¶¶ 1-6. Her civil rights docket includes a variety of racial and economic justice issues.

Conner Decl. ¶¶ 2-4. Prior to working at the ACLU, she worked at the Center on Race,

Poverty, and the Environment and the NAACP Legal Defense and Educational Fund.

Conner Decl. ¶ 3. She often presents on civil rights issues, including those that impact

unhoused individuals and free speech conversations across the country. Conner Decl. ¶

5. She has also been asked to testify regarding her civil rights expertise for the Fair

Employment and Housing Council. Conner Decl., ¶ 5. Furthermore, she currently sits as

the American Bar Association Young Lawyers Division Liaison to the American Bar

Association Standing Committee for Public Education and as the Environmental Justice

Chair for the National Bar Association Young Lawyers Division, and previously served

as a board member for Central California Legal Services. Conner Decl. ¶ 6. She has

focused her entire legal career on civil rights and civil liberties issues. Conner Decl. ¶¶

1-6.

Mr. Freeman has over forty years of experience as a litigation attorney. Freeman

Decl. ¶¶ 2-3. His adjusted hourly rate of $630 reflects his expertise in complex civil

litigation and his work leading over 30 class actions in state and federal court. *Id.* Prior

to working at the ACLU, he served in the Civil Division of the United States Department

of Justice and was partner at two internationally recognized civil litigation firms. *Id.* ¶ 3.

He also worked on several complex civil liberties cases since starting at the ACLU,

including a state-wide class action lawsuit to vindicate the rights of unhoused individuals

during sweeps of their encampments. *Id.* ¶ 4.

The work of Legal Services of Northern California was principally performed by

Laurance Lee, with substantial guidance and work also completed by Sarah Ropelato.

Lee Decl. ¶ 6. Mr. Lee's hourly rate of $275 reflects his six years of experience working

in direct services on a myriad of issues including eviction defense, public benefits

cases, and fair housing litigation. Lee Decl. ¶¶ 4, 15. He has been lead counsel in

important civil rights cases, such as a challenge to terminating a housing choice voucher. Lee Decl. ¶ 4. His expertise and on-the-ground advocacy with unhoused and homeless populations unearthed the City's plans to adopt the Defendant's Ordinance. Lee Decl. ¶ 5. A graduate of the University of California Los Angeles and the University of California Davis School of Law, he has dedicated his entire legal career to direct services and economic justice advocacy. Lee Decl. ¶ 3.

Ms. Ropelato's hourly rate of $345 reflects her thirteen years of experience in direct services and complex civil litigation, including instances where she led favorable California appellate proceedings. Ropelato Decl. ¶¶ 3-4. She has represented organizations and individuals for important impact litigation decisions, including challenging a city's action that was inconsistent with its housing element. *Id.* ¶ 4. She has vast expertise representing clients in areas such as immigration petitions, public benefits, and eviction defense. *Id.* ¶ 4. Ms. Ropelato has also dedicated her entire legal career to direct services, impact litigation on behalf of vulnerable populations, and housing-related litigation. *Id.*

As set forth in their respective declarations, these attorneys have at all times sought to minimize duplication of effort. Conner Decl. ¶¶ 17-19; Lee Decl. ¶ 13. Unfortunately, the unwillingness of the City to concede the lack of constitutional justification for the Ordinance, both before and after issuance of the preliminary injunction—even when the City knew it had no evidence to support the Ordinance's enactment—required Plaintiffs' counsel to expend more time and effort than might otherwise have been necessary.

Even after the issuance of the injunction, Plaintiffs had to litigate for seven months, propounding multiple sets of discovery and threatening depositions, before the City conceded defeat. Conner Dec ¶¶ 10-13. Even then, the negotiation of a settlement

**MEMO OF POINTS AND AUTHORITIES ISO MOTION FOR AWARD OF ATTORNEY'S FEES**
Case No.: 2:18-CV-00878-MCE-AC

1  required months of discussions. To the extent the City may claim that the fees now

2  sought are higher than they should be, the City has only itself to blame.

3       To summarize, Plaintiffs in this motion have voluntarily discounted their lodestar

4  amount in several ways. They have reduced the number of hours for which they are

5  requesting fees for Plaintiffs; In addition, they have reduced the market rate for Abre'

6  Conner to 5/6 of her market rate and 2/3 of Bill Freeman's market rate; Plaintiffs also

7  discounted an across the board cut to their fees for this fee motion by over $14,000;

8  they have removed from their request the work of several attorneys and paralegals,

9  even though each of their work added substantial value to the forward movement of this

10 case; and they have discounted their hourly rates to approximate rates that have been

11 approved by this Court for similar litigation. Conner Dec ¶¶ 18-19; Lee Dec ¶¶ 15-16. In

12 addition, despite the complete victory obtained, Plaintiffs have decided not to seek a

13 multiplier over and above the lodestar. As a result, Plaintiffs request an award in the

14 amount of $321,621.33, reflecting a total of 949.06 hours at rates ranging from $275 per

15 hour (for more junior attorneys) to $630 per hour (for more senior attorneys). The details

16 of the work performed and time incurred by each attorney are set forth in their

17 respective declarations. This information is shown in **Exhibit A**.

18                                    **ARGUMENT**

19 **I.    The Plaintiffs Prevailed and are Entitled to Attorney's Fees**

20      Plaintiffs are entitled to reasonable attorney's fees under 42 U.S.C. §1988 and

21 California Code of Civil Procedure § 1021.5. Under each of these statutes, as explained

22 more fully below, a prevailing plaintiff "should ordinarily recover an attorney's fee unless

23 special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461

24 U.S. 424, 429 (1983). Because the City has already conceded Plaintiffs' entitlement to

25 an award of reasonable attorney's fees, Plaintiffs set forth the following argument in

26 summary form and the Consent Decree provides for such an award.

27

28

### A.    Federal Law – 42 U.S.C. § 1988

Section 1983 prescribes liability for "any person" who subjects another person to "the deprivation of any rights, privileges or immunities secured by the Constitution and laws…" Plaintiffs should ordinarily recover attorney's fees in a successful Section 1983 action. 42 U.S.C. § 1988; *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

#### 1.    Vindication of the right of Free Speech -- a "right secured by the Constitution" -- supports a Section 1988 fee award

Freedom of speech is a quintessential right that is the bedrock of the Constitution, and there is no doubt that free speech provisions are important and necessary to foundational freedoms in this country. *Blessing v. Freestone, et al.*, 520 U.S. 329 (1997). "It is beyond dispute that solicitation is a form of expression entitled to the same constitutional protections as traditional speech." *ACLU of Nevada v. City of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 2006).

#### 2.    Plaintiffs were the prevailing parties because they succeeded in a motion for preliminary injunction

A prevailing party is one who succeeds on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit..." *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 788 (1989), quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978). Issuance of a preliminary injunction against the enforcement of an unconstitutional law constitutes the kind of success that supports a fee award. *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980). Moreover, the Defendant repealed the Ordinance. ECF No. 36 at 1.

### B.    California Law – Code Civ. Proc. § 1021.5

Cal Code Civ. Proc. § 1021.5 provides for an award of attorney's fees to a successful party in an action "which has resulted in the enforcement of an important right affecting the public interest" if "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b)

the necessity and financial burden of private enforcement … are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." California plaintiffs are entitled to attorney's fees under Section 1021.5 when they prevail in federal court on California claims. See *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

### 1. Plaintiffs are prevailing parties by reason of the preliminary injunction

A threshold requirement for a fee award under Section 1021.5 is that the party seeking fees must be "a successful party against one or more opposing parties in any action[.]" *County of Colusa v. California Wildlife Conservation Bd.*, 145 Cal.App.4th 637, 648 (2006) (internal citations omitted). "The terms 'prevailing party' and 'successful party,' as used in section 1021.5, are synonymous." *Id.* at 649. "[T]he fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees." *Vasquez v. State*, 45 Cal.4th 243, 250 (2008) (quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 565 (2005)). "In order to effectuate that policy, [courts] have taken a broad, pragmatic view of what constitutes a 'successful party.'" *Graham*, 34 Cal.4th at 565. Issuance of a preliminary injunction that "alters the relationship of the parties supports the award of attorney's fees to the party on whose behalf the injunction was entered. *County of Colusa*, 145 Cal.App.4th at 658.[2]

### a) This case conferred a significant benefit on the residents of Sacramento

To award fees under Section 1021.5, a court must find that a significant benefit has been conferred on "the general public or a large class of persons…" The benefit in question may be "pecuniary or nonpecuniary," since "in many cases the important gains

---

[2] Even in the absence of an injunction, Plaintiffs would be entitled to an award of fees under the "catalyst theory" set forth in *Vasquez v. State*, 45 Cal.4th 243, 253 (2008). Since Defendant does not challenge Plaintiffs' entitlement to fees, however, Plaintiffs will forego detailed discussion of this alternative theory.

1  or contributions rendered by public interest litigation will be reflected in nonmonetary

2  advances." *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal.3d at 939.

3  There must be a determination of "the significance of the benefit, as well as the size of

4  the class receiving benefit, from a realistic assessment, in light of all the pertinent

5  circumstances, of the gains which have resulted in a particular case." *Robinson v. City*

6  *of Chowchilla*, 202 Cal.App.4th at 397 (quoting *Woodland Hills,* 23 Cal.3d at 939-40).

7  Vindicating a statutory policy can confer a significant benefit in the Section 1021.5

8  context. *Apple, Inc. v. Franchise Tax Board*, 199 Cal.App.4th 1, 29 (2011); *Baxter v.*

9  *Salutary Sportsclubs, Inc.*, 122 Cal.App.4th 941, 945-47 (2004); *Woodland Hills*, 23

10  Cal.3d at 930-31. Here, a large class of persons is involved, as the Ordinance

11  threatened all Sacramento residents with penalties for solicitation. ECF No. 29 at 8.

12                          **b)    Necessity and financial burden of private enforcement**
                                 **support the award of fees**

13

14       Private enforcement of a right is necessary when "public enforcement is not

15  available, or not sufficiently available." *In re Conservatorship of Whitley*, 50 Cal.4th

16  1206, 1217 (2010). The City rebuffed numerous efforts to stop it from adopting the

17  Ordinance. Indeed, the City began enforcing the Ordinance immediately and individuals

18  were cited prior to the Court enjoining the Defendant. Declaration of Laurance Lee, ECF

19  No. 17, Attachment 1. "[W]here, as here, a lawsuit is brought against the very

20  governmental entity and officials who refuse to comply with their admitted statutory

21  responsibilities, the 'necessity of private enforcement' portion of the test is readily met."

22  *City of Santa Monica v. Stewart*, 126 Cal.App.4th 43, 85 (2005).

23       In addition, the financial burden of private enforcement renders proper the award

24  of attorney's fees when "the cost of the claimant's legal victory transcends his personal

25  interest; that is, when the necessity for pursuing the lawsuit placed a burden on the

26  plaintiff out of proportion to his individual stake in the matter." *In re Adoption of Joshua*

27  *S.*, 42 Cal.4th 945, 952 (2008) (internal quotations omitted). "[T]he court must focus on

28

the financial burdens and incentives involved in bringing the lawsuit." *Edna Valley Watch v. Cnty. of San Luis Obispo*, 197 Cal.App.4th 1312, 1320 (2011). Here, Plaintiffs are (1) an unhoused person without any significant financial resources who was threatened by the Ordinance with the loss of the opportunity to sustain himself, and (2) nonprofit organizations advocating for such persons, who can ill afford to divert their limited resources to contest unconstitutional governmental action. Order at 8.

<strong>c)   Plaintiffs reasonably attempted to settle before filing this lawsuit</strong>

Finally, to recover attorney fees under Section 1021.5, Plaintiffs must establish that they "'reasonably attempted to settle the litigation prior to filing the lawsuit.'" *Vasquez v. State*, 45 Cal.4th 243, 253 (2008). "Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time. What constitutes a 'reasonable' time will depend on the context.'" *Vasquez*, 45 Cal.4th at 254 (quoting *Graham*, 34 Cal.4th at 577 (internal citations omitted)). As set forth in pages 3-6 above, Plaintiffs repeatedly sought to resolve their claims without resulting to litigation.

**II.   The fees sought are reasonable and fully compensable**

**A.   The hours claimed are reasonable**

Under California and federal law, Plaintiffs are entitled to fully recover attorney's fees if they achieved "excellent results" for their clients, which encompasses "all hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Reasonable attorney's fees are determined by initially calculating the lodestar, which is the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate. See *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). A court may then adjust the amount

upward or downward based on a series of factors identified by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976);[3] *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). Indeed, there is a strong presumption that the lodestar is a reasonable award and a multiplier to adjust an award upward or downward is appropriate only in rare and exceptional cases. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

Moreover, the Plaintiffs as the prevailing parties have done their due diligence to ensure that the hours are not "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. at 434; *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987). In general, deference is given to the winning lawyers' professional judgment as to how much time was required for the case. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

 The award of attorney's fees is within the discretion of the trial court. *Kerr*, 526 F.2d at 69; *Keith v. Volpe*, 501 F. Supp. 403, 410 (C.D. Cal. 1980). To determine what is reasonable, a court addresses those of the twelve Kerr factors that are "called into question by the case at hand and necessary to support, for the purpose of meaningful review, the reasonableness of the fee award." *Keith*, 501 F. Supp. at 410 (citing *Stanford Daily v. Zurcher*, 64 F. R. D. 680, 681 (N.D. Cal. 1974)).

Evaluating this case against the Kerr factors, the number of hours claimed by Plaintiffs is reasonable. To begin with, as set forth in the declaration of Abre' Conner,

---

[3] The *Kerr* factors are:(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Kerr,* 526 F.2d at 70.

1   Plaintiffs have already reduced the number of hours devoted by their attorneys by

2   nearly 281 hours to ensure that any possible inefficiencies or duplication of effort have

3   been eliminated. Conner Dec, ¶¶ 11-19, 21. In addition, Plaintiffs' claim is fully

4   documented with detailed time summaries, based on contemporaneous records that

5   demonstrate how and when each hour was spent. Conner Decl. ¶ 21. The ACLU-NC

6   and LSNC coordinated all litigation tasks closely, as co-counsel, to ensure there was no

7   unnecessary duplication of effort. Conner Decl. ¶ 9. While the ACLU-NC and LSNC had

8   times where they made joint appearances at court hearings, discovery conferences, or

9   settlement conversations, organizations had separate responsibilities pursuant to the

10  division of labor, ensuring that there indeed was no duplication regarding the scope of

11  the issues and multi-faceted strategies that needed both organization's expertise to

12  move forward this successful litigation. Conner Decl. ¶ 9.

13        Moreover, the area of anti-panhandling and solicitation ordinances is rapidly

14  developing to reflect the *Supreme Court's Reed v. Town of Gilbert* decision. Courts

15  across the country grappled with and, in some instances, overturned their earlier

16  decisions because of this recent decision. *Norton v. City of Springfield* 806 F.3d 411,

17  412 (7th Cir. 2015); *Thayer v City of Worcester*, Mass 144 F. Supp.3d 218, 233 (D.

18  Mass. 2015).

19        The analysis and litigation of the case required expertise in a myriad of legal

20  concepts and advocacy skills in addition to the application of a complex body of law to

21  facts specific to the Plaintiffs, the City, and the adoption and subsequent repeal of the

22  Ordinance. Experienced attorneys advocated a difficult and potentially unpopular

23  position against a powerful and determined adversary. The result obtained was a

24  complete victory that enabled the individual plaintiff to maintain his literally life-saving

25  activities without fear of harassment, citation and arrest, and enabled the organizational

26  plaintiffs to continue to advocate on behalf of their community without suffering

27

28

potentially crippling diversion of resources. See ECF No. 36 at 1-2. This was the best possible result regarding the status of the Ordinance for the Plaintiffs.

This is not merely the story of a motion, a hearing and a speedy conclusion. As outlined above, despite Plaintiffs' best efforts, the City persisted both before the injunction hearing and for seven months afterwards that it could and would support the Ordinance. *See infra* 5-6. The City had no plans to abandon its attempts to support the Ordinance but for Plaintiffs' persistence. ECF No. 29, Order at 4. To the extent that the City may protest the number of hours it forced the Plaintiffs' attorneys to devote to this case, the City has only itself to blame. Indeed, Plaintiffs not only cut their normal rate, but also heavily discounted time to account for any potential duplication.

**B.    The hourly rates claimed are reasonable**

A reasonable hourly rate is determined by what is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). Moreover, the ACLU and LSNC are both non-profit organizations, and should receive a "full compensatory fee." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). Indeed, the fee should be comparable to the rates attorneys receive "by a fee-paying client." *Id*. Also, the private attorney general fee statutes are meant to "encourage suits effectuating a strong [public] policy by awarding ***substantial*** attorney's fees … to those who successfully bring such suits. *Woodland Hills Residents Assn v. City Council*, 23 Cal.3d 917, 933 (1979) (emphasis added).

Attorney's fees are calculated according to the "prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citing *Blum v. Stenson*, 465 U.S. 886, 895, (1984)). The relevant community "is the forum in which the

district court sits." *Id.* In Sacramento, that range can be as high as $825 per hour. See Declaration of Jay-Allen Eisen ("Eisen Decl.) at ¶ 15.

The rates requested in this motion are reasonable and in keeping with prevailing market rates in the Eastern District. Abre' Conner acted as lead attorney for the ACLU-NC in this matter and, as referenced above, has dedicated her career to civil rights and liberties work. She is regularly asked to speak, present, and teach government entities regarding their free speech obligations. Conner Decl. ¶ 5. A reasonable hourly rate for Ms. Conner is $337.50. Eisen Decl. ¶ 20. For attorneys with eight years of experience, the Eastern District has awarded rates of $560. Eisen Decl. ¶ 17. William Freeman also has decades of complex civil litigation experience that was useful in strategizing and litigating the instant case. Freeman Decl. at ¶¶ 2-4. A reasonable hourly rate for Mr. Freeman is $630.  Eisen Decl. ¶ 20. The Eastern District has awarded rates of $720 for attorneys with nearly two decades less experience. Eisen Decl. ¶ 17. Laurance Lee had primary responsibility for this matter for Legal Services of Northern California. Lee Decl. ¶ 5. As stated above, he has six years of experience as a staff attorney in public interest advocacy and litigation with a focus on issues related to homelessness. Lee Decl. ¶¶ 3; 4. Reasonable hourly rate for Mr. Lee is $275. *Id.* at 15. The Eastern District has awarded rates ranging from $475 and $520 for attorneys with six to nine years' experience. Eisen Decl. ¶17. Sarah Ropelato is a managing attorney with Legal Services of Northern California with thirteen years of experience specializing in issues of poverty, including litigation pertaining to housing, homelessness, and public benefits as well as complex housing element litigation and multi forum land use and environmental advocacy. Ropelato Decl. ¶¶ 3-4. A reasonable hourly rate for Ms. Ropelato is $345. Eisen Decl. ¶20; Lee Decl. ¶15. The Eastern District has awarded rates ranging from $590 and $655 for attorneys with twelve to sixteen years' experience. Eisen Decl. ¶17.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for attorney's fees and award fees in the amount of $321,621.33.

DATED: February 5, 2020                          Respectfully Submitted,


                                                 By:____/s/ Abre' Conner____
                                                         Abre' Conner


                                                 Abre' Conner (SBN 306024)
                                                 William S. Freeman (SBN  82002)
                                                 American Civil Liberties Union
                                                 Foundation of Northern California,
                                                 Inc.

                                                 Laurance Lee, (SBN 301482)
                                                 Sarah Ropelato, (SBN 254848)
                                                 Legal Services of
                                                 Northern California

                                                 Attorneys for Plaintiffs

# EXHIBIT A

***SRCEH, et al. v. City of Sacramento***

Exhibit A to Memorandum in Support of Fee Motion

<u>Summary of hours and fees incurred and requested by Plaintiffs (including fees incurred in preparing fee motion)</u>

| | (1)<br>Total Hours Recorded[1] | (2)<br>Hours, After Reduction | (3)<br>Standard Hourly Rates | (4)<br>Hourly Rates, After Reduction | (5)<br>Original Fee Amount (1) x (3) | (6)<br>Requested Fee Amount (2) x (4) | (7)<br>$ Difference (5) – (6) |
|---|---|---|---|---|---|---|---|
| ACLU-NC | | | | | | | |
| Conner | 629.67 | 597.59 | $ 405 | $ 337.50 | $ 255,016.35 | $ 201,686.63 | $ 53,329.72 |
| Freeman | 92.40 | 90.07 | $ 945 | $ 630 | $ 87,318.00 | $ 56,744.10 | $ 30,573.90 |
| ACLU TOTAL | 864.50 | 687.66 | | | $ 342,334.35 | **$ 258,430.73** | **$ 83,903.62** |
| | | | | | | | |
| LSNC | | | | | | | |
| Lee | 181 | 175.40 | 275 | 275 | $ 49,775.00 | $ 48,235.00 | $1,540.00 |
| Ropelato | 95.1 | 86 | 345 | 345 | $ 32,809.50 | $ 29,670.00 | $ 3,139.50 |
| LSNC TOTAL | 365.5 | 261.40 | | | $ 82,584.50 | **$ 77,905.00** | **$ 4,679.50** |
| Additional reduction (to bring fee motion fees down to $25,000) | | | | | | **($ 14,714.40)** | **$ 14,714.40** |
| GRAND TOTAL | 1,230 | 949.06 | | | $ 424,918.85 | **$ 321,621.33** | $ 103,297.52 |

---

[1] After eliminating all time incurred by 3 ACLU-NC attorneys including Alan Schlosser, Esq.  (See Conner Declaration ¶ 17) and all time incurred by 3 LSNC attorneys (see Lee Declaration ¶ 16).